# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRISTIAN ALVAREZ HERNANDEZ,<br>a/k/a DUENDE,<br>  Defendant. | Case No. 17-cr-10373-MLW |

## SENTENCING MEMORANDUM OF THE UNITED STATES

Defendant Cristian Alvarez Hernandez is a member of the violent gang, La Mara Salvatrucha a/k/a MS-13. Specifically, he is a member of the Everett Locos Salvatrucha ("ELS") clique of MS-13, one of the largest and most violent MS-13 cliques operating in Massachusetts during the 2014-2017 time period. The defendant showed himself to be a dedicated, active, and rising member within ELS well before immigration authorities arrested him in September 2017. Evidence, including multiple firearms and 150 rounds of ammunition seized from the defendant, images on the defendant's phone showing his commitment to MS-13, and information from cooperating witnesses, speaks to the defendant's undeterred dangerousness and rising status within a clique whose members had previously been decimated by law enforcement's takedowns and subsequent prosecutions in *United States v. Recinos Garcia, et al.*, 15-cr-10338-FDS, including for acts involving murder. While the defendant did not personally participate in an actual murder, he engaged in violent conduct on MS-13's behalf and held an elevated position within a clique with a known history for violence that included murdering gang rivals or suspected cooperators in furtherance of the gang's objectives. It thus was reasonably foreseeable to the defendant that gang members would conspire to commit murder (as

1

well as other acts of violence) on the enterprise's behalf. Stated differently, the defendant knew and understood that conspiring to murder was a core objective of MS-13's gang lifestyle.

The defendant has pleaded guilty to RICO conspiracy under 18 U.S.C. § 1962(d) and has admitted to his participation in a racketeering conspiracy on behalf of the MS-13 enterprise. For these and other reasons set forth herein, the government respectfully asks the Court to sentence the defendant to ***121 months in prison*** – the top of his Guidelines as agreed upon by the parties – to be followed by ***three years of supervised release***.

**I.     The Guideline Range That Best Captures the Defendant's Conduct and Reflects the Evidence is Conspiracy or Solicitation to Commit Murder.**

Based on relevant conduct reasonably attributable to the defendant, the draft presentence report has calculated the defendant's base offense level as 43 and his guideline sentencing range (after a role reduction and acceptance of responsibility) as 210 to 262 months. Probation's calculation largely centers on facts showing a connection between the defendant and the 2015 murder of Wilson Martinez. Those facts include the defendant's dispute at high school with the victim (a suspected rival 18th Street gang member) that served as an impetus for the murder; evidence indicating that the defendant created a Facebook page to lure out rival 18th Street gang members (including Martinez) under the auspices of meeting with an attractive young female; and that the defendant granted control of that Facebook page to another gang member who subsequently participated in Martinez's actual murder.

Because the defendant's conduct contributed to a spiraling of events that ultimately resulted in Martinez's death, probation has applied U.S.S.G. § 2A1.5(c)(1) (and thus § 2A1.1). Put another way, because there is an identifiable victim (Martinez) arising

from the defendant's knowing participation in a conspiracy to murder, probation is holding the defendant accountable for Martinez's actual murder – even though there is insufficient evidence that the defendant planned, ordered, or participated in the murder itself.

The government respectfully proposes a different manner of interpreting that same factual framework as to the defendant, which in turn, results in a different Guideline calculation. Under that factual framework, the government draws a distinction between those who in fact were present for, attacked, and killed Martinez (clearly warranting a 43) and someone like the defendant, who unquestionably knew and understood the foreseeability of certain types of racketeering activity—including conspiracy or solicitation to murder—by co-conspirator MS-13 gang members, but who had no role in Martinez's actual murder itself. Specifically, the government (in agreement with the defense) believes the applicable base offense level as to the defendant is 33 under U.S.S.G. § 2A1.5, i.e., the conspiracy or solicitation to commit murder guideline.[1]

---

[1]  In the government's view, a base offense level 33 reflects an important and equitable position. Just as a base offense level of 43 seems slightly inappropriate where the government lacks evidence that Alvarez Hernandez personally planned, ordered, or participated in the commission of first-degree murder, it seems similarly unfair—given the disturbing nature of the evidence and the racketeering conspiracy at large—to instead conclude that his lack of actual participation in a murder thereby drops the base offense level to the minimum RICO offense level of 19. A base offense level of 33 reflects the true and troubling nature of the offense conduct, including the defendant's awareness and acceptance of conspiracy to murder activity within the gang.

This measured approach also has an added practical benefit: it places before the Court all of the relevant information about the defendant's participation in the conspiracy while avoiding an unnecessary fight at sentencing about whether the government can prove an offense level of 43 by a preponderance of the evidence. The proposed framework—and the plea agreement between the parties—appropriately takes into consideration all the evidence about the defendant's involvement in the RICO conspiracy at large. Neither side is seeking an evidentiary hearing about whether the court should apply the first-degree murder or the conspiracy to murder guideline.

First, there is no dispute that the defendant is a member of MS-13, a notoriously violent gang whose core operating principles involve murder. The evidence as outlined in the PSR well captures this point. *See generally* Initial PSR ¶¶ 12-36. Moreover, courts have acknowledged the same in related cases in recent years. *See, e.g.*, *United States v. Perez-Vasquez*, 6 F.4th 180, 187 (1st Cir. 2021) (stating "MS-13 has defined its primary mission as killing rivals, especially members of the 18th Street gang"); *id.* ("MS-13 members are forbidden from cooperating with law enforcement. A member who cooperates with law enforcement will have a 'green light' put on him, which means he will be killed by other MS-13 members."); *United States v. Gonzalez*, 981 F.3d 11, 14 (1st Cir. 2020) ("MS-13 has gained notoriety for the brutality of its crimes and the relative youth of both its members and its victims"; stating "[t]he core purpose of MS-13 is to kill or maim rival gang members"); *see also* Indictment, ¶ 5 ("Members of MS-13 and their associates used and threatened to use physical violence against various individuals, including members of rival criminal organizations and MS-13 members who violated the enterprise's rules.").

Secondly, the evidence in this case, which is further outlined herein, confirms the defendant's knowing participation in MS-13 (including after spending time in immigration custody), as well as his knowledge, intent, and agreement as to MS-13's violent objectives. That evidence includes images from the defendant's own phone showing, *inter alia*, his close association and access to MS-13 leaders and convicted murderers, him posing with dangerous weapons like firearms and machetes, and his overall embracing of the MS-13 lifestyle, including flashing gang signs alongside gang members and wearing gang colors and symbols. That evidence also includes information from cooperating witnesses who highlighted the defendant's exposure to, and at times,

4

participation in violent acts on MS-13's behalf, including acts against gang rivals. *See, e.g.*, Initial PSR ¶¶ 43-47.

Even if the defendant's role within the enterprise and corresponding conduct is simply viewed through a prism of conspiracy to murder gang rivals or insubordinate MS-13 members, conspiracy to murder was plainly within the scope of the MS-13 enterprise that the defendant willingly joined, in which he actively participated, and within which he successfully achieved an elevated status of chequeo (one level shy of homeboy status). Accordingly, the government believes that a base offense level 33 under U.S.S.G. § 2A1.5 is appropriate and warranted. Such a base offense level reflects the seriousness and dangerousness of the defendant's conduct while also acknowledging its true scope. In contrast to other MS-13 defendants charged and/or convicted in this district, the defendant was not a stabber, shooter, or even identified participant in an actual murder. Nor did he order the murder or plan the details of the murder. He nevertheless knew and embraced the enterprise's violent objectives, making conspiracy to murder clearly foreseeable to the defendant.

Were the Court to adopt probation's recommendation as to the applicable Guidelines and apply a base offense level 43 and role reduction, such an analysis still should not change the sentence this Court ultimately imposes as to the defendant. A sentence of 121 months is warranted and strikes the appropriate balance between the defendant's knowledge, intent, and role in furthering MS-13's core objectives and any instigative force – however minimal or tangential – he may have set in motion that resulted in the Martinez murder.

## II. The Sentencing Factors Outlined in 18 U.S.C. § 3553(a) Support the Parties' Recommended Sentence of 121 Months.

The defendant was a multi-year member in MS-13's ELS clique, a historically large and notoriously violent group within one of the most violent criminal enterprises in the world. While not a leader within ELS, the defendant's position of chequeo (just below that of homeboy, the latter of which generally is earned by committing a violent act like murder) illustrates his rising status in the gang, his loyalty to it, and his knowledge and intent as to MS-13's objectives. In particular, images on the defendant's phone, including multiple photographs of him with senior ELS MS-13 members and convicted murderers from both his own clique and other cliques, show the level of trust the gang held in the defendant.[2] He had close access to and associations with high-level gang members – a privilege earned through acts (commonly violent ones) showing a member's loyalty and commitment to the gang. Moreover, information from cooperators showed that gang members were eager to give the defendant an opportunity to be promoted to homeboy – in part due to his well-established propensity for violence and commitment to MS-13.

For example, a January 2016 recording made by a cooperating witness speaking with an MS-13 gang member, the latter of whom was a main participant in a January 2016 murder of a teenage victim named Cristofer de la Cruz, captured the gang member

---

[2] Attached as Exhibit 1 are five sample photographs that help demonstrate Alvarez Hernandez's commitment to the gang. Photograph 1 is a picture of Alvarez Hernandez holding up a firearm while making MS-13 gang signs. Photograph 2 is a picture of Alvarez Hernandez (in the Boston Bruins shirt) holding up a machete while making MS-13 gang signs. Photograph 3 is a picture of Alvarez Hernandez with Noe Perez Vasquez a/k/a Crazy, a leader of the defendant's ELS clique who was sentenced to life in prison. Photograph 4 is a picture of Alvarez Hernandez with Edwin Gonzalez a/k/a Sangriento, a member of the Molinos clique who participated in the murder of Wilson Martinez and was sentenced to life in prison. Photograph 5 is a picture of Alvarez Hernandez with Carlos Melara, another participant in the Wilson Martinez murder who was sentenced to 432 months in prison.

discussing both his participation in the murder and the gang's extended invite to the defendant to also participate in it (the defendant apparently fell asleep the night of the murder). Initial PSR, ¶ 49. Other cooperating witnesses recounted the defendant's supposed involvement in conspiracies or attempts to commit murder on MS-13's behalf. Examples of such information included the defendant's involvement with another gang member in a knife attack on an 18th Street gang rival (supposedly resulting in his promotion to chequeo); the defendant's attack on a gang rival by hitting him over the head with a chain with a large lock; and the defendant's attack on an 18th Street gang rival with a machete. *Id.* ¶¶ 43-44. In an October 2015 recording made by a cooperating witness speaking with two MS-13 gang members, the gang members similarly discussed a machete attack that had occurred on an 18th Street gang rival. *Id.* ¶ 50. Both identified the defendant ("Duende") as the one who had "caught" the rival, with one of the gang members further identifying the referenced "Duende" as "Cristian." *Id.* Lastly, as previously referenced, a cooperating witness identified the defendant as having created a Facebook page that he and another gang member used to both target and lure out 18th Street gang rivals for gang attacks – the same Facebook page that successfully enticed Martinez to a fateful gang encounter. *Id.* ¶¶ 45-47.

All such cooperating witness information is highly disturbing. It evidences the defendant's acceptance of MS-13's core principles of violence while also providing important context for the various images on the defendant's phone showing him alongside high-level MS-13 members. Gang members – literally and figuratively – embraced the defendant and sought to advance his position within MS-13 because of his proven loyalty to them as established by prior undertaken violent acts.

The defendant's reputation was such that it was even memorialized in a 2017 MS-13 gang rap song.  A cooperating witness noted that the song, previously posted on YouTube (and which law enforcement subsequently obtained, *see* Initial PSR ¶ 52), detailed MS-13's commitment to murder while expressly naming the defendant ("Duende").  In fact, the defendant is *the only* gang member explicitly cited in the entire song.  The lyrics in which he is named reference that he was released on bond based on his juvenile status – following which he returned to his gang lifestyle.  The lyrics mirror reality: the defendant was not indicted following the 2015-2016 law enforcement takedowns and prosecutions of multiple MS-13 members; instead, he was placed in immigration custody as a minor; after securing his release on bond, he then reengaged in his gang activity.[3]

All of this evidence calls for a sentence that will protect the public and promote respect for the law and deterrence from further crimes.  The defendant has had various encounters with law enforcement authorities, most notably, with immigration.  Indeed, the defendant has been picked up by immigration authorities *no less than four times*.  And one of his immigration arrests (January 2016) occurred against the backdrop of the January 2016 takedown that led to the large-scale prosecution in *United States v. Recinos Garcia, et al.*  Despite multiple run ins with law enforcement, despite being in immigration custody (sometimes for months at a time), and despite witnessing numerous fellow gang members get arrested and prosecuted, the defendant remained undeterred and resolute in his commitment to MS-13, returning to the gang lifestyle almost immediately upon each of his releases from custody.  That lifestyle not only included

---

[3]  Attached as Exhibit 2 is a draft translation of the lyrics of this MS-13 rap video titled "Vacilando en Boston" [Hanging Out in Boston] that was posted on Youtube.

associating with gang members but possessing weapons, the latter of which was further evidenced by images on the defendant's phone (including pictures of firearms and ammunition atop the defendant's bed), *see* Ex. 1, the incidents underlying the defendant's immigration detentions, and even the defendant's arrest in this case. Specifically, at the time of his arrest, the defendant possessed over 150 rounds of ammunition and at least three firearms.

This factual background shows the continued escalation of the defendant's troubling conduct and unwavering dedication to MS-13. He lost core gang members to law enforcement's 2016 takedown but pressed onward. He was detained by immigration on multiple occasions and spared deportation but pressed onward. He began possessing weapons and even selling them (as reported by a cooperating witness). Although he was arrested by law enforcement before this escalation resulted in any (known) participation in murder, there is no doubt of the defendant's commitment to a violent street gang whose core operating principles include murder.

For all of these reasons, the government believes that a sentence of ***121 months*** imprisonment followed by ***three years of supervised release*** is sufficient, but not greater than necessary, to comply with the factors under 18 U.S.C. § 3553. It constitutes a high-end Guidelines sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, protects the public from further crimes of the defendant, and affords adequate deterrence.

## CONCLUSION

For the reasons stated in this sentencing memorandum and those to be advanced at the defendant's sentencing hearing, the government respectfully requests that the Court sentence Alvarez Hernandez to ***121 months in custody***, to be followed by ***three years of supervised release***.

                                    Respectfully submitted,

                                    JOSHUA S. LEVY
                                  First Assistant United States Attorney

                      By: /s/ Kaitlin R. O'Donnell
                            KUNAL PASRICHA
                            KAITLIN R. O'DONNELL
                            Assistant United States Attorneys
                            District of Massachusetts

**Certificate of Service**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

               By: /s/ Kaitlin R. O'Donnell
                 KAITLIN R. O'DONNELL
                 Assistant United States Attorney
                 District of Massachusetts