UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:17 CR 10373 |
| | ) | **Leave to File Redacted** |
| CRISTIAN ALVAREZ HERNANDEZ | ) | **Sentencing Memorandum** |
| | ) | **Granted on January 7, 2022** |
| Defendant | ) | |

## <u>CRISTIAN ALVAREZ HERNANDEZ' SENTENCING MEMORANDUM</u>

Defendant Cristian Alvarez Hernandez ("Mr. Alvarez Hernandez") respectfully submits this memorandum in support of his request that the Court impose a sentence of 121 months of incarceration as jointly recommended by the parties pursuant to a plea agreement entered into pursuant to Fed. R. Crim. P. 11(c)(1)(C).

The Indictment in this case charged Mr. Alvarez Hernandez with two counts: Count 1 charged a RICO conspiracy for his associating with and participating in the affairs of the enterprise known as MS-13 or La Mara Salvatrucha, in violation of 18 U.S.C. § 1962(d); and Count 2 charged him with being an alien in possession of ammunition in violation of 18 U.S.C. § 922(g)(5)(A). On September 20, 2021, Mr. Alvarez Hernandez offered a plea of guilty to both counts.

As set forth more fully below, Mr. Alvarez Hernandez submits that, based upon the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), the Court should find that the agreed-upon disposition is "sufficient but not greater than necessary" to achieve the goals of sentencing. Indeed, Mr. Alvarez Hernandez submits that this is a case which cries out for the application of the statutory factors given his age at the time of the offending conduct to which he has pled guilty. As he comes before the Court for sentencing today, Mr. Alvarez Hernandez is a

young man of 22. But at the time he became involved with the conduct to which he has pled

guilty he was still a young teen of 15, and he was 18 years old at the time of his arrest.[1]

Mr. Alvarez Hernandez's life story, short as it has been thus far, is one of misfortune,

abuse, neglect and challenges which no young teenager should have to endure.  As a child

growing up in El Salvador, he was abused, exposed to significant violence, and left to fend for

himself.  Seeking to escape his circumstances, Mr. Alvarez Hernandez endured a 3-month

journey beginning in El Salvador and finishing as he crossed the border of Mexico into the

United States alone without his parents or any relatives with him. When he arrived in

Massachusetts there was only one community for him to associate with as a practical matter, the

El Salvadoran community and within that community MS-13 members held great influence,

especially among young people. Since being arrested, Mr. Alvarez Hernandez has spent the last

four years in custody awaiting trial in this case.  This too has been a very difficult experience for

him. He has experienced depression and severe anxiety. At one point, he was held in isolation for

over 8 months.  In November 2020, he contracted covid and was seriously ill given his pre-

existing respiratory issues.  He recently contracted covid for a second time.

Mr. Alvarez Hernandez is now of an age where he better understands the wrongful nature

of his conduct and the consequences which he must accept for it.  He understands that

participating in MS-13 has had consequences that have significantly impacted not just himself

but the broader community in which he lived.  But in mitigation of his mistakes, the Court

should recognize Mr. Alvarez Hernandez's young age, and the science which supports the lack

of critical brain development in a male teenager, as discussed below.  Mr. Alvarez Hernandez

has worked hard to begin to become a man even while incarcerated.  Despite the many

---

[1] Attached hereto as Exhibit A is a photograph of Mr. Alvarez Hernandez during relevant the time period.

challenges and consequences he now faces, he is determined to turn his life around. A 121-month sentence – while a substantial sentence for a young man with no prior criminal record – would give him an opportunity to do just that.

### 1. Mr. Alvarez Hernandez's Personal History

Mr. Alvarez Hernandez's personal background is summarized in the Pre-Sentence Report ("PSR"). *See* PSR ¶¶ 88-121. A detailed description regarding his childhood and adolescence is contained in the Forensic Mental Health Evaluation ("Forensic Report") conducted by Dr. Stephanie Tabashneck. *See* Forensic Report pp. 7-13. A copy of the Forensic Report is attached as Exhibit B.

Born in La Palma, Chalatenango, El Salvador, Mr. Alvarez Hernandez had an extraordinarily difficult and challenging childhood. He was abandoned by his father as a baby and by the time he reached age 5, his mother moved to the United States to establish a better life for her family, resulting in his older sister Karen, age 9 at the time, raising him along with some support from a paternal grandmother. PSR at ¶89. Early in his life, Mr. Alvarez Hernandez was physically abused. His paternal grandmother regularly hit him with a belt or his hands and made him kneel on corn. *Id*. He was abused by his uncle and aunt who beat him with an electric cord. Forensic Report p. 9. By the time he was 9 years old, Mr. Alvarez Hernandez and his sister were living alone without any adult support. PSR at ¶89. At age 10, Mr. Alvarez Hernandez was the victim of a traumatic sexual assault that occurred at a church. *Id*. The details of that abuse and the resulting trauma are detailed in Dr. Tabashneck's forensic evaluation. Forensic Report p. 9, 12.

When Mr. Alvarez Hernandez was 11 years old, Karen became pregnant resulting in him needing to take care of himself. *Id*. ¶ 90. From ages 11 to 15, Mr. Alvarez Hernandez lived

alone.  *Id*.  He was left to support and protect himself.  When he did go to school, he was

constantly bullied for being small and having large ears.  *Id*.  He attended school until the age of

12, when he started working to support himself.  Forensic Report p. 8.  He was exposed to

significant violence in his community amongst citizens, family members and the police.  He

observed police take children to the river to physically beat them.  *Id*.  He himself was beaten by

police.  *Id*. p. 8-9.

At the age 15, Mr. Alvarez Hernandez embarked on a three-month journey to get to the

United States, going from El Salvador to Mexico to Texas with another individual who traveled

with him.  PSR at ¶ 91.  After being held in an immigration detention center for children, Mr.

Alvarez Hernandez went to live with his mother and siblings in East Boston, Massachusetts.

Forensic Report at p. 7.

Mr. Alvarez Hernandez attended East Boston High School at the age of 15.  Forensic

Report p. 10.  School was difficult for him as he did not speak English or fit in.  *Id*.  He was

teased because of his language and appearance.  *Id*.  Feeling marginalized, he began to associate

more with peers from El Salvador because he could communicate with them best and felt

accepted by them.  *Id*.

At the age of 16, Mr. Alvarez Hernandez was taken into custody for the first for an

immigration violation and detained at Abraxas in Morgantown, Pennsylvania.  *Id*.  After being

released from immigration, he was quickly detained again, at the age of 17 for an immigration

violation.  *Id*.  Once again, he was released from immigration custody.  Approximately two and a

half months later, he was arrested and charged with the offenses set out in the Indictment.  *Id*.

Not surprisingly, Mr. Alvarez Hernandez's emotional and physical abuse also led him to

experiment with alcohol and drugs at an early age.  He first smoked marijuana at age 11 and tried

alcohol at age 12.  PSR ¶¶ 111-112.  His substance use issues became more serious after he arrived in the United States.  Due to adjustment issues and family conflicts, he consumed alcohol daily.  *Id*. ¶ 111.  He also tried cocaine and crack cocaine shortly after arriving in the United States.  *Id*. ¶ 112.  As a result of his long-term marijuana use, Mr. Alvarez Hernandez experienced depression and cravings when he was arrested and detained without access to marijuana.  *Id*.

   2.  **Forensic Mental Health Evaluation**

   Counsel respectfully submits that research in the area of neuropsychology and brain development in male teenagers should inform the Court in understanding Mr. Alvarez Hernandez's actions and the consequences he should suffer as a result of them. To this end, Counsel has submitted a report from Dr. Stephanie Tabashneck, an expert on late adolescent brain development and the associated behavioral research as it relates to impulsivity, reckless behavior, peer influence, gang activity, and youth involvement in criminal conduct.  A description of Dr. Tabashneck's qualifications can be found at Exhibit B.

███████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████

### 3. The Offense Conduct

The offense conduct that is the subject of the Indictment in this case is described in ¶¶ 10-52 of the PSR.  The facts underlying Conspiracy to Conduct Enterprise Affairs Through a Pattern of Racketeering Activity (Count 1) are derived from a large-scale investigation into the enterprise known as the MS-13 gang.  Mr. Alvarez Hernandez has admitted and pled guilty to associating with and participating in the affairs of MS-13.  His admission includes both knowledge and intent regarding MS-13's mission of committing acts of violence.  The bulk of the evidence of Mr. Alvarez Hernandez's membership in MS-13 consists of photographs of Mr. Alvarez Hernandez with other gang members along with statements of cooperating witnesses describing his participation in the gang.

Notably, to the extent that cooperating witnesses described Mr. Alvarez Hernandez committing acts of violence, the government did not seek separate groups for those acts for the

purposes of relevant conduct.  While Mr. Alvarez Hernandez does not dispute or seek to

minimize his membership in the MS-13 gang, the government's decision is relevant in assessing

the extent of his offense conduct and ultimately an appropriate punishment.

 The facts underlying Alien in Possession of Ammunition charge (Count 2) are as follows:

On September 2, 2017, Mr. Alvarez Hernandez was a passenger in a vehicle that was stopped by

police.  *Id*. ¶¶ 58-59.  Police removed from the vehicle a backpack belonging to Mr. Alvarez

Hernandez containing ammunition.  *Id*. ¶ 59.  Following his arrest, Mr. Alvarez Hernandez was

turned over to Immigration Custom Enforcement custody as he was not legally present in the US.

*Id*.  As part of his relevant conduct, Mr. Alvarez Hernandez has admitted to possessing

ammunition and three firearms.  *Id*.

### 4.  The Sentencing Guidelines

 There is no dispute between the government and Mr. Alvarez Hernandez regarding the

proper calculation and application of the United States Sentencing Guidelines.  The government

and Mr. Alvarez Hernandez are agreed that the appropriate sentence is 121 months incarceration,

the top end of the sentencing guidelines.  Pursuant to U.S.S.G. §§ 2E1.1(a)(2) and 2A1.5(a), the

base offense level applicable to Mr. Alvarez Hernandez, based upon relevant conduct as a

member of the MS-13 which includes the enterprise's ongoing mission to commit murder, is **33**.

*Id*. ¶ 4.  The parties further agree that the guideline calculation for Count 2 is **14** pursuant to

U.S.S.G. §§ 2K2.1(a)(7) and (b)(1)(A), and that Mr. Alvarez Hernandez is entitled to a three-

point reduction for acceptance of responsibility per U.S.S.G. §3E1.1.  *Id*.  The total offense level

of **30** along with Mr. Alvarez Hernandez's Criminal History category I yields a sentencing range

of **97-121 months**.

Mr. Alvarez Hernandez disagrees with the Probation Department's calculation of the sentencing guidelines.  As noted in his objections to the PSR, Mr. Alvarez Hernandez objects, vigorously, to the application of U.S.S.G. §2A1.5(c)(1) suggesting his participation in a conspiracy to murder Wilson Martinez.  As noted in the PSR itself, Mr. Alvarez Hernandez did not participate in the murder of Mr. Martinez and was not at the scene.  *Id*. ¶ 45.  Additionally, after conducting an extensive investigation, the government did not charge Mr. Alvarez Hernandez with murdering Mr. Martinez or with conspiracy to murder.  As further noted in the PSR, the government does not have proof of Mr. Alvarez Hernandez's actual participation in a murder.  *Id*. ¶ 28.

To the extent that the PSR indicates that Mr. Alvarez Hernandez participated in an alleged conspiracy to murder Mr. Martinez by creating a fake Facebook account that was allegedly used to lure Mr. Martinez to his death, that assertion is contradicted by exculpatory evidence produced by the government.  A report summarizing the government's interview of a confidential informant states unambiguously that an individual known as "Sangriento" created and used a fake Facebook account to lure Mr. Martinez to a beach where he was ultimately murdered by MS-13 members.  The report further states that Sangriento *excluded* Alvarez Hernandez from the plan to murder Mr. Martinez because he thought that Mr. Alvarez Hernandez was too young and it was a problem that Mr. Alvarez Hernandez knew Mr. Martinez from school.  Accordingly, there is not a basis in fact or law to apply USSG §2A1.5(c)(1) to Mr. Alvarez Hernandez.

**5.   Application of the Statutory Purposes of Sentencing under 18 U.S.C. § 3553(a)(2)**

The statutory purposes of sentencing include: (1) reflecting the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) affording adequate deterrence to criminal conduct; (3) protecting the public from further crimes of the defendant; and (4) providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  *See* 18 U.S.C. § 3553(a)(2)

The jointly recommended sentence of 121 months would satisfy all the purposes of sentencing embodied in 18 U.S.C. § 3553(a)(2).  In real terms, the sentence amounts to a decade of incarceration for a young man with no prior criminal history.  Such a lengthy term of prison reflects the seriousness of the consequences for those who choose membership and participation in the MS-13.  The sentence delivers a strong message to those who are presently members of MS-13 or contemplating membership: if you are a member of MS-13 or participate in MS-13 activities you will be caught, you will be prosecuted, and you will serve a substantial amount of time in prison.  The sentence reflects the seriousness of the offense and promotes respect for the law.  Mr. Alvarez Hernandez does not need to be subjected to incarceration for more than 121 months to deter him from engaging in this conduct again.  He has already paid a significant price for his conduct and will continue to do so.

Mr. Alvarez Hernandez has demonstrated that he will make effective use of correctional programs and trainings that are offered to him.  He is actively taking courses to obtain his General Educational Development (GED).  Forensic Report p. 15.  He is also receiving academic tutoring through the Harvard Organization for Prison Education and Advocacy (HOPE).  *Id*.  He has also completed the following coursework at Wyatt: GED Prep, Anxiety Workbook, COVID-

19 Anxiety Workbook, Personal Boundaries, Sleep Problems/Insomnia Issues, Substance Abuse

Workbook, Adjustment to Incarceration, Criminal Lifestyles, and Basic Kitchen Standards.

Various certificates of completion are attached as Exhibit C.  Mr. Alvarez Hernandez has also

registered for a treatment program at Wyatt Detention Center and has expressed an interest in

participating in drug treatment.  *Id.* ¶ 114.

Mr. Alvarez Hernandez has demonstrated redeemable qualities and positive contributions

to those around him.  As noted in the letters provided by friends and family as well as

documentation obtained from East Boston High School, where he was a student prior to his

arrest, Mr. Alvarez Hernandez has demonstrated tremendous perseverance and has potential to

be a productive member of his community.  Letters of support are attached as Exhibit D.  For

example, Mr. Alvarez Hernandez has worked as a line cook at Wyatt Detention for the past year

and a half.  He has received impressive performance reviews.  As noted by William Anderson,

the Food Service Director at Wyatt Detention, Mr. Alvarez Hernandez "has been diligently

working in the kitchen" and is "always willing to assist when needed and goes over and above."

Perhaps most importantly, Mr. Anderson notes, "Mr. Alvarez has remained respectful to all staff

and the detainee population."  Letter of William Anderson, Food Service Director at Donald W.

Wyatt Detention Facility along with work performance evaluations of Mr. Alvarez Hernandez

are attached as Exhibit E.  Certainly, Mr. Alvarez Hernandez's positive contributions to the

kitchen staff demonstrate his willingness to work hard and his potential as a young man.

## CONCLUSION

For the foregoing reasons, Mr. Alvarez Hernandez respectfully requests that this Court

impose upon him the agreed-upon sentence of incarceration of one hundred twenty-one (121)

months.

Respectfully Submitted
CRISTIAN ALVAREZ-HERNANDEZ,
By his attorneys,


/s/ Howard M. Cooper
Howard M. Cooper (BBO # 543842)
hcooper@toddweld.com
Michael R. DiStefano (BBO # 675615)
mdistefano@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02109
Dated:  January 10, 2022              T: 617-720-2626

## CERTIFICATE OF SERVICE


I, Howard M. Cooper, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Howard M. Cooper

Howard M. Cooper


Dated: January 10, 2022